IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAMIAN MCDONALD, on behalf of the )
Laboratory Corporation of America )
Holdings Employees' Retirement Plan, )
himself, and all others similarly situated, )
) 1:22CV680
Plaintiff, )
)
v. )
)
LABORATORY CORPORATION )
OF AMERICA HOLDINGS, )
)
Defendant.

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff Damian McDonald brings this action against Defendant Laboratory Corporation of America Holdings ("LabCorp"), alleging a breach of its fiduciary duties in violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). (ECF No. 15.) Before the Court is Defendant's Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 17.) For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff alleges that Defendant is a statutory fiduciary of the Laboratory Corporation of America Holdings Employees' Retirement Plan (the "LabCorp Plan"), a qualified retirement plan governed by ERISA. (ECF No. 15 ¶¶ 1, 16, 18.) More specifically, the LabCorp Plan is a defined contribution 401(k) plan that "provides the primary source of retirement income for many former LabCorp employees." (*Id.* ¶¶ 16, 19.) According to the

Complaint, as of December 31, 2020, the LabCorp Plan had over $3.8 billion in assets and over 55,300 participants. (*Id.* ¶ 21.) Plaintiff is a participant in the LabCorp plan, (*id.* ¶ 23), and he brings this action as a putative class action "to protect the retirement savings" of all participants in the plan, (*id.* ¶¶ 1, 26). Plaintiff's proposed class includes "[a]ll persons who were participants in or beneficiaries of the Plan, at any time between November 8, 2016, and the present." (*Id.* ¶ 26.)

In this action Plaintiff claims that Defendant breached its fiduciary duty of prudence with respect to the LabCorp Plan by: (1) allowing the plan to pay excessive recordkeeping fees; and (2) causing the plan to offer high-cost retail share classes of mutual funds when lower-cost institutional share classes of the same funds were available. (*Id.* ¶¶ 130–36.)

### A. Allegations Regarding Recordkeeping Fees

Like other 401(k) plans, the LabCorp Plan pays certain fees to a third-party service provider for certain administrative services (sometimes called "recordkeeping services") using participant's assets. (*Id.* ¶¶ 9, 33.) The third-party service provider (the "recordkeeper") "keeps track of the amount of each [plan] participant's investments in . . . the plan, and typically provides each participant with a quarterly account statement." (*Id.* ¶ 33.) A recordkeeper may also provide such services as maintaining a website for the plan and providing participants with investment education materials or advice. (*Id.*) "Nearly all recordkeepers in the marketplace offer the same range of services," which are "largely commodities" and "can be provided by recordkeepers at very little cost." (*Id.* ¶¶ 33, 34.) "The market for recordkeeping is highly competitive," and "recordkeepers vigorously compete for business by offering the best price." (*Id.* ¶ 35.) "The cost of providing recordkeeping services depends mainly on the number of participants in a plan," and "most plans are charged on a per-participant basis."

2

(*Id.* ¶ 36.) "Plans with large numbers of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee." (*Id.*) Over time, high recordkeeping fees can significantly diminish the growth of a plan participant's retirement savings. (*Id.* ¶¶ 9–15.)

Plaintiff alleges here that the LabCorp Plan was large enough during the relevant time period to obtain recordkeeping services at an annual rate of no more than $25 per participant, but instead it paid $43 per participant (or more) during that time. (*Id.* ¶¶ 44, 67, 71.)

### B. Allegations Regarding Fund Share Classes

Investment companies that maintain funds may offer various "share classes" of such funds. (*Id.* ¶ 104.) When a company offers different share classes of a fund, some of the share classes may require an investor to pay higher fees to the company as compared to other share classes. (*Id.*) Except for the difference in fees, the investments may be identical. (*Id.*) Retirement plans with substantial assets can use their size to negotiate with investment companies so that the plan can offer its participants access to lower-fee share classes of funds. (*Id.*) Absent negotiations with the plan, the investment company might instead offer only higher fee "retail" share classes of the same funds to participants. (*Id.*)

Plaintiff identifies fourteen funds for which the LabCorp Plan allegedly offered high-fee share classes to participants rather than available lower-fee share classes. (*Id.* ¶ 117.) Plaintiff also identifies the share classes of the funds that the plan offered, and the share classes that Plaintiff contends the plan should have offered. (*Id.*)

## II. STANDARD OF REVIEW

A motion made under Rule 12(b)(6) challenges the legal sufficiency of the facts in the complaint, specifically whether the complaint satisfies the pleading standard under Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a "short

3

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)). A claim is plausible when the complaint alleges sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The court "view[s] the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, "a [district] court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

## III. DISCUSSION

"To allege a breach of ERISA's fiduciary duties of loyalty and prudence, [a plaintiff] must allege three elements: '(1) the Plan is governed by ERISA; (2) Defendants were fiduciaries of the Plan; and (3) Defendants breached their [fiduciary] duties of prudence and/or loyalty under ERISA, resulting in losses to the participants of the Plan.'" *Dearing v. IQVIA Inc.*, No. 1:20-CV-574, 2021 WL 4291171, at *3 (M.D.N.C. Sept. 21, 2021) (quoting *Jones v. Coca-Cola Consol., Inc.*, 20-CV-654, 2021 WL 1226551, at *4 (W.D.N.C. Mar. 31, 2021)). ERISA's fiduciary duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

4

Here, the first two elements of a breach of fiduciary duty claim are alleged, (ECF No. 15 ¶¶ 16–18), and Defendant's motion does not contest this, (*see generally* ECF No. 18). Instead, Defendant focuses on the third element, that is, whether the Complaint alleges Defendant breached its duty of prudence. (ECF No. 18 at 17.) The Court addresses each of Plaintiff's theories of liability—excessive fees and high-cost share classes—in turn.

### A. Excessive Recordkeeping Fees Claim

"A plaintiff raising an excessive fee claim under ERISA must allege that fees were excessive related to the services rendered." *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 362 (M.D.N.C. 2022) (quoting *Kendall v. Pharm. Prod. Dev., LLC*, 20-CV-71, 2021 WL 1231415, at *11 (E.D.N.C. Mar. 31, 2021)). "Courts in this circuit have found that a breach of fiduciary duty claim was plausibly alleged when the plaintiffs alleged a plan's recordkeeping and administrative fees were more expensive than similar plans' expenses for comparable services." *Id.* at 363 (citing *Turpin v. Duke Energy Corp.*, 20-CV-528, 2022 WL 287548, at *2 (W.D.N.C. Jan. 31, 2022)). "Moreover, a 'plan fiduciary's failure to reduce recordkeeping costs through negotiation or the solicitation of competing bids may in some cases breach the duty of prudence.'" *Id.* at 362 (quoting *Kendall*, 2021 WL 1231415, at *10).

Here, in addition to generally alleging that the LabCorp Plan paid over $43 per participant during the proposed class period when it could have paid $25 or less per participant, (ECF No. 15 ¶¶ 44, 67, 71), the Complaint identifies four other plans that were allegedly similar in size to the LabCorp Plan in the year ending 2020, purchased similar recordkeeping services as the LabCorp Plan in that year, and purchased those similar services from the same provider as the LabCorp Plan, but paid $25 or less for those services. (*See* ECF No. 15 ¶¶ 82–93.) The Complaint also compares the LabCorp Plan unfavorably to a plan

5

offered by the recordkeeping provider to its own employees, (*id.* ¶¶ 95–98) and alleges that Defendant failed to hire a consultant to assess the fees the LabCorp Plan was paying and failed to solicit competitive bids for recordkeeping services, (*id.* ¶¶ 61, 101). Many federal courts have found similar allegations sufficient to withstand a motion to dismiss. *See, e.g., Garnick*, 629 F. Supp. 3d at 362–66; *Coppel v. SeaWorld Parks & Ent., Inc.*, No. 21-CV-1430, 2023 WL 2942462, at *14 (S.D. Cal. Mar. 22, 2023) (collecting cases); *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018) ("The question of whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss."). Defendant, however, presents several arguments why Plaintiff nevertheless fails to state a claim in this case.

Defendant first argues that Plaintiff fails to state a claim "because he does not plausibly allege that the [LabCorp] Plan's recordkeeping fees were 'too expensive *in the market generally*.'" (ECF No. 18 at 18 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823–24 (8th Cir. 2018)).) This argument is not persuasive because Defendant does not explain what it means for a plan's recordkeeping fees to be "too expensive in the market generally," or why such an allegation is necessary. (*See id.*) Defendant draws the "too expensive in the market generally" language from an out-of-circuit case that addressed fund fees rather than recordkeeping fees. *Meiners*, 898 F.3d at 821. That case also did not strictly require that a plaintiff allege that a fund offered by a plan was "too expensive in the market generally." *Id.* at 823–24 ("[T]he existence of a cheaper fund does not mean that a particular fund is too expensive in the market generally *or that it is otherwise an imprudent choice*." (emphasis added)).[1]

---

[1] Defendant's only further elaboration for this argument is an out-of-context quote from another out-of-circuit case. (ECF No. 18 at 18 (citing *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022)).) According to Defendant, the Seventh Circuit held that "a plaintiff 'cannot proceed to discovery solely on the basis that the Plan paid higher recordkeeping fees than a potentially random assortment of nine

Defendant next presents several arguments that Plaintiff fails to state a claim because he "fails to identify comparator plans that are appropriate benchmarks for the Plan." (ECF No. 18 at 18.) These arguments all generally contend that the comparator plans are so dissimilar from the LabCorp Plan that no inference of imprudence can arise from the fact that the comparator plans paid less per participant for recordkeeping fees than the LabCorp Plan.

Defendant begins by arguing that the principal four comparator plans in the Complaint are dissimilar with respect to their numbers of participants and assets. (*Id.* at 18–19.) This argument is not persuasive. The Complaint alleges that, as of the end of the year 2020, two of the proposed comparator plans had more participants than the LabCorp Plan and two had fewer participants; and that three had greater assets and one had lesser assets. (ECF No. 15 ¶ 82.) However, all four plans paid less per participant in direct fees than the LabCorp Plan. (*Id.*) The comparators thus establish a range of prices that larger or smaller plans can bargain for, and LabCorp Plan is above that range. This could support the claim that Defendant did not negotiate recordkeeping fees prudently. At the motion to dismiss stage, this Court will not attempt a more extensive interpretation of plan size data.[2] *See In re Sutter Health ERISA Litig.*, No. 20-CV-1007, 2023 WL 1868865, at *10 (E.D. Cal. Feb. 9, 2023) (declining to address

---

other plans from around the country.'" (*Id.* (quoting *Albert*, 47 F.4th at 579).) This quote is from the court's summary of a defendant's argument; the court's actual holding was that a court should be sensitive to context when analyzing an excessive fees claim. *Albert*, 47 F.4th at 580.

[2] Defendant also faults the comparisons because they use data only for the year ending 2020. (*See* ECF No. 18 at 9.) Defendant contends that documents integral to the Complaint show that the LabCorp Plan added over $1.5 billion in assets during in the year ending 2020 by merging with another plan (the LabCorp Plan began the year with $2.04 billion in assets and ended the year with $3.89 billion in assets); in contrast, the smallest of the proposed comparators began the year with $2.2 billion in assets. (*Id.* at 9–10 & n.3.) This argument is not persuasive. At this stage of litigation, this Court will not speculate whether a snapshot of data from one point in time might be superior to a snapshot of data from a different point in time, nor will the Court speculate what a different snapshot might show.

7

arguments about what fee per participant plans of varying sizes can negotiate for at the motion to dismiss stage).

Defendant next argues that the allegations about what recordkeeping services the LabCorp Plan and the comparators purchased are insufficiently specific; Defendant proposes that Plaintiff must allege that the LabCorp Plan and comparator plans all purchased exactly the same recordkeeping services. (ECF No. 18 at 18–20.) This argument is also not persuasive. The Complaint alleges that "[t]he services chosen by a large plan do not affect the amount charged by recordkeepers," (ECF No. 15 ¶ 58); instead, "recordkeeping expenses are driven by the number of participants in a plan," (*id.* ¶ 36). Taking as true the allegation that specific recordkeeping services chosen by a large plan do not affect total fees, there is no reason to require detailed allegations about which recordkeeping services plans purchased.[3]

Defendant contends, however, that recent decisions from the Sixth Circuit, the Seventh Circuit, and the Eighth Circuit support its view; according to Defendant, these courts all held that only plans receiving the "same services" can be compared to one another. (ECF No. 18 at 6–7 (citing *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022); *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022); *Matousek v. MidAm. Energy Co.*, 51 F.4th 274 (8th Cir. 2022)).)

---

[3] *See Coyer v. Univar Sols. USA Inc.*, No. 22-CV-362, 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022) ("[P]laintiffs . . . do not need to provide examples of similar plans receiving the same services in the same year where, according to plaintiffs, the primary drivers of price in large plans are the number of accounts and whether the plan's fiduciaries solicited competitive bids, rather than the marginal cost of recordkeeping for each participant."); *In re Sutter Health*, 2023 WL 1868865, at *10 ("It is sufficient at [the motion to dismiss] stage that [p]laintiffs allege specific facts supporting their claims that the [p]lan's fees and [t]otal [p]lan [c]ost *were excessive for its size*." (emphasis added)); *Silva v. Evonik Corp.*, No. 20-CV-2202, 2020 WL 12574912, at *8 (D.N.J. Dec. 30, 2020) (finding the allegation that "nearly all recordkeepers in the marketplace perform the same core group of services" sufficient to survive a motion to dismiss). *But see Krutchen v. Ricoh USA, Inc.*, No. 22-CV-678, 2023 WL 3026705, at *2 (E.D. Pa. Apr. 20, 2023) (refusing to credit allegations that "recordkeepers provide the same quality of services" and "recordkeeping fees are determined only by the number of participants and size of assets" because they "defi[ed] common sense" and certain ERISA literature).

8

This Court finds that these out-of-circuit cases are distinguishable and do not support that Plaintiff here must provide additional details about the specific recordkeeping services purchased by the plans. *See Coyer v. Univar Sols. USA, Inc.*, No. 22-CV-362, 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022) (concluding that *Albert* does not require a plaintiff to plead that plans received identical services); *Brown v. MITRE Corp.*, 22-CV-10976, 2023 WL 2383772, at *4–5 (D. Mass. Mar. 6, 2023) (distinguishing *CommonSpirit Health*, *Albert*, and *Matousek* and denying motion to dismiss). Indeed, a year after deciding *Albert*, the Seventh Circuit determined that a plaintiff pleaded that fees were excessive relative to services rendered by alleging that "recordkeeping services are [commoditized and] fungible," "that the market for them is highly competitive," and giving a specific dollar figure for how much would be a reasonable recordkeeping fee for the services provided based on the plan's size. *Hughes v. Nw. Univ.*, 63 F.4th 615, 632 (7th Cir. 2023).

Defendant also argues that Plaintiff's comparisons fail because they do not account for indirect compensation being paid by the comparators.[4] (ECF No. 18 at 19.) The essence of Defendant's argument is that Plaintiff presents only direct compensation figures in the Complaint. (*Id.*) Although these direct compensation figures suggest that the LabCorp Plan paid more than the comparators, tax filings for the comparators show that the comparators

---

[4] "In a typical 'direct' recordkeeping fee arrangement, [a] plan contracts with a recordkeeper to obtain administrative services in exchange for a flat annual fee based on the number of participants for which the recordkeeper will be providing services—for example, $30 per year, per plan participant." (ECF No. 15 ¶ 38.) "Indirect" compensation would be, for example, a recordkeeper keeping any returns on money held in clearing accounts during participant transactions, (*id.* ¶ 46), or a recordkeeper receiving fees calculated as a percentage of a plan's assets, (*id.* ¶ 47). A plan may use a direct-compensation-only payment plan, an indirect-compensation-only payment plan, or a payment plan that combines some amount of direct compensation with additional indirect compensation. (*Id.* ¶ 37.)

9

also paid some unspecified amount of indirect compensation.[5] (ECF No. 18 at 12–13, 19.) Defendant argues that Plaintiff must account for the indirect compensation to make any non-speculative comparison. (*Id.* at 19.) That argument is not persuasive here.

The Complaint alleges that Defendant has not tracked how much indirect compensation its recordkeeper receives for servicing the LabCorp Plan, (ECF No. 15 ¶ 46), and that the recordkeeper provides Defendant with a "formula instead of an amount or estimated amount" of indirect compensation received, (*id.* ¶ 76).[6] The Complaint also alleges that Defendant does not disclose to plan participants (such as Plaintiff) "what that alleged formula is, much less what application of that formula translates to in terms of the amount of 'indirect compensation' plan participants are paying." (*Id.*) Courts recognize that "[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences," and take this into account when assessing a complaint. *Garnick*, 629 F. Supp. 3d at 367 (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)). Here, although Plaintiff has not alleged amounts of indirect compensation, the allegations are nevertheless sufficient to compare plans. The comparator plans use the same recordkeeper as the LabCorp Plan, and the tax filings for the comparators reflect that the recordkeeper also provides them with formulas rather than

---

[5] "This [C]ourt may consider [these tax filings] as well as those of other [p]lans alleged in the Amended Complaint [because they] are 'integral to and explicitly relied on in the Amended Complaint and . . . Plaintiffs do not challenge their authenticity.'" *Garnick*, 629 F. Supp. 3d at 364 n.5 (quoting *Phillips v. LCI Int'l., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

[6] The Court notes that there is authority that not tracking indirect compensation may support a claim for a breach of the duty of prudence. *See Sweda v. Univ. of Pa.*, 923 F.3d 320, 332 (3d Cir. 2019) ("[T]he Eighth Circuit held that [a] district court did not err in finding fiduciaries breached their duties by 'failing to calculate the amount the Plan was paying the recordkeeper for recordkeeping through revenue sharing . . .', among other things." (quoting *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014)) (cleaned up)).

10

amounts for indirect compensation. (ECF Nos. 18-3 at 11; 18-4 at 7; 18-5 at 7; 18-6 at 7.) Additionally, at this stage of the litigation the Court must take as true that the purchased recordkeeping services are of similar value. These similarities—plans purchasing similarly-valued services from the same provider and reporting indirect compensation in a similar manner—allow an inference at this stage of the litigation that the plans pay similar rates of indirect compensation. With this inference, Plaintiff has sufficiently alleged that the plans are comparable.[7]

Defendant also argues that Plaintiff cannot support his claim by comparing the LabCorp Plan to the plan that the LabCorp Plan's recordkeeper (Fidelity) offers to its own employees. (ECF No. 18 at 21–23.) Defendant emphasizes that other federal courts have rejected attempts by plaintiffs to compare their plans to the Fidelity plan. (*Id.*)

Some background regarding the Fidelity plan is useful here. Several years ago, participants in the Fidelity plan sued claiming excessive recordkeeping fees; during that litigation, the parties "stipulated that if Fidelity were a third party negotiating [the] fee structure at arms-length, the value of services would range from $14-$21 per person per year . . . and that the recordkeeping services provided by Fidelity to [its] [p]lan are not more valuable than those received by other plans of over $1,000,000,000 in assets where Fidelity is the recordkeeper." *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 214 (D. Mass. 2020). Since then, some district courts have refused to use that $14–$21 figure as a benchmark for other plans because the stipulation did not specify what services were included. *Johnson v. PNC Fin. Servs. Grp.*, No. 20-CV-1493, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021); *Wehner v. Genentech,*

---

[7] Discovery may reveal that accounting for indirect compensation pushes the per-participant rates of the comparator plans above the $25 per participant threshold Plaintiff proposes, or it may even reveal that the proposed comparator plans pay more than the LabCorp Plan. Under the applicable standard of review, however, those possibilities do not warrant dismissing Plaintiff's claim.

11

*Inc.*, No. 20-CV-6894, 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021). However, a court in this district recently "decline[d] to determine whether Fidelity is an appropriate benchmark to suggest imprudence at [the motion to dismiss] stage" because "[the] determination [required] a factual inquiry." *Garnick*, 629 F. Supp. 3d at 364.

Here, the Court finds that the Fidelity plan can provide a point of comparison at this stage of the proceedings. The Court makes this finding because: (1) the Complaint alleges that that recordkeeping fees are set based on plan size; and (2) the *Moitoso* stipulation specified it was making a comparison with other plans with over $1 billion in assets and the Complaint here alleges that the LabCorp Plan had over $1 billion in assets.[8]

Defendant's last argument addresses the allegations that it failed to solicit bids from other recordkeepers. (ECF No. 18 at 25–26.) Defendant presents authority that supports that a plaintiff does not state a claim by alleging merely that a defendant did not regularly solicit bids from providers. (*Id.* (citing *Albert*, 47 F.4th at 579–80). Plaintiff responds that he alleges more than that Defendant merely failed to regularly solicit bids—Defendant allegedly went over six years without soliciting bids, and similar plans paid less for services during that time. (ECF No. 21 at 22 (citing ECF No. 15 ¶¶ 60–61); *see also* ECF No. 15 ¶ 26 (alleging relevant time period).) Plaintiff argues these allegations support an inference that Defendant did not prudently administer the plan. (ECF No. 21 at 22.) The Court agrees with Plaintiff. *See Kendall*, 2021 WL 1231415, at *10 (collecting cases supporting that "[a] plan fiduciary's failure

---

[8] At this stage of the litigation, the Court does not find Defendant's argument that using the Fidelity plan as a comparator is inconsistent with also using the other plans previously discussed as comparators just because those other plans did not pay between $14–$21 per participant persuasive. (ECF No. 18 at 21.) This argument does not appear to be fully briefed. Plaintiff alleges that the LabCorp Plan could have paid $25 or less per participant, and $14–$21 is less than $25.

12

to reduce recordkeeping costs through negotiation or the solicitation of competing bids may in some cases breach the duty of prudence").

Given the foregoing, the Court finds that Plaintiff identifies sufficient benchmarks against which to compare the LabCorp Plan. The Court further finds that the comparisons, in combination with the allegations that Defendant did not track how much it paid or solicit competing bids for over six years, sufficiently allege a claim that Defendant breached its duty of prudence by not investigating and negotiating its recordkeeping fee arrangement.

### B. Share Classes Claim

"[A] fiduciary is not required to select the cheapest option possible," *Kendall*, 2021 WL 1231415, at *7, and "merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach," *id.* (quoting *Marks v. Trader Joe's Co.*, No. 19-CV-10942, 2020 WL 2504333, at *8 (C.D. Cal. Apr. 24, 2020)). "[A] court should consider 'whether the higher-class share offered other benefits that may have offset any additional costs." *Id.* (quoting *Marks*, 2020 WL 2504333, at *8). However, if the complaint alleges that available alternative lower cost share classes were "substantially identical," the plaintiff has stated a claim because "a trustee cannot ignore the power the trust wields to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016); *see also Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 478 (M.D.N.C. 2015) (denying motion to dismiss where plaintiffs alleged "imprudent retention of . . . retail class funds when institutional class shares were available").

Here, the Complaint alleges that "as of October 4, 2022, the Plan's menu needlessly consisted of expensive target date and mutual fund share classes offered by the Plan during

13

the Class period when, in fact, lower-cost share classes *for the same funds* were readily available." (ECF No. 15 ¶ 117 (emphasis added).) The Complaint includes a chart identifying fourteen share classes of mutual funds that Plaintiff contends were too expensive and fourteen corresponding lower-cost alternatives, and additionally alleges that, based on the LabCorp Plan's size throughout the proposed class period, the "the less expensive [share] class (or an equivalent) has always been available to the Plan."[9] (*Id.* ¶¶ 117, 120.) Plaintiff contends that Defendant "should have known of the existence and availability of lower-cost share classes and should have promptly transferred the Plan's investments in such funds to the least expensive share classes," but failed to do so, thus breaching the duty of prudence. (*Id.* ¶ 121.)

These allegations closely track what the caselaw requires for a claim based on improper inclusion of retail share classes.

Defendant, however, makes a meritorious objection to one of Plaintiff's fourteen proposed high-cost-to-low-cost substitutions. The issue is that the challenged allegedly high-cost fund is a mutual fund, and the proposed lower-cost alternative is a collective investment trust ("CIT").[10] (ECF No. 15 ¶¶ 113, 117, 122.) Mutual funds and CITs are too different for a plaintiff to allege that a plan fiduciary should have switched from a mutual fund to a CIT solely because the CIT would be cheaper. *See Tobias v. NVIDIA Corp.*, No. 20-CV-6081, 2021 WL 4148706, at *12 (N.D. Cal. Sept. 13, 2021) (collecting cases and explaining that "collective trusts, unlike mutual funds, 'are not subject to the reporting, governance, and transparency requirements of the Securities Act of 1933 . . . and the Investment Company Act of 1940'"

---

[9] Defendant asserts that the specific institutional share class that the Complaint contends Defendant should have utilized did not exist until April 23, 2021, and therefore it was not available during most of the proposed class period. (ECF No. 18 at 24 n.11.) At the motion to dismiss stage, this Court cannot consider this challenge to the truth of an allegation in the Complaint.

[10] The other substitutions that the Complaint proposes are mutual fund-to-mutual fund substitutions.

(quoting *Davis v. Salesforce.com, Inc.*, No. 20-CV-1753, 2020 WL 5893405, at *6 (N.D. Cal. Oct. 5, 2020))); *Moitoso*, 451 F. Supp. 3d at 212 ("[T]here is no fiduciary duty to investigate alternatives to mutual funds."). The Court therefore finds that the allegation that Defendant should have offered the shares of the CIT rather than the mutual fund does not support Plaintiff's claim.

However, Defendant's final argument discussed herein is not persuasive. Defendant argues that certain allegations in the Complaint detailing how Defendant did switch the LabCorp Plan into less expensive share classes three times during the relevant time period demonstrate prudent administration. (ECF No. 18 at 24.) Defendant bases this argument on *In re LinkedIn ERISA Litigation*, No. 20-CV-5704, 2021 WL 5331448, at *10 (N.D. Cal. Nov. 16, 2021). (ECF No. 18 at 24.) However, the court in that case did not hold that allegations that a fiduciary switched to institutional shares during the class period defeats a share-classes claim as a matter of law. The plaintiffs there argued that a switch was a "tacit admission" that the earlier inclusion of a higher-cost share class was imprudent; the court rejected that argument stating that it was "*equally likely* that the . . . switch demonstrates that [a defendant] was, in fact, fulfilling its fiduciary duty." 2021 WL 5331448, at *10 (emphasis added). This Court agrees that the competing interpretations are both viable. As inferences are drawn in favor of the plaintiff at this stage of litigation, the allegations of prior upgrades in investment choices thus could support Plaintiff's claim. *See Smith v. Shoe Show, Inc.*, No. 20-CV-813, 2022 WL 583569, at *7 (M.D.N.C. Feb. 25, 2022) ("defer[ring] [at the motion to dismiss stage] to [p]laintiffs' description" of periodic changes in a plan's investments as evincing failure of fiduciary to monitor the plan during the time prior to the change to the more favorable investment).

15

Case 1:22-cv-00680-LCB-JLW   Document 24   Filed 07/28/23   Page 15 of 16

The Court therefore finds that Plaintiff has plausibly alleged that Defendant breached its fiduciary duty of prudence by retaining high-cost share classes of mutual funds when lower-cost share classes of the same funds were available. However, the Court will dismiss the part of Plaintiff's claim that relates to removing a mutual fund in favor of a CIT.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 17), is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** only as to Plaintiff's claim that Defendant breached its duty of prudence by offering MFS Mid Cap Growth Fund Class R6 (OTCKX) as an investment option on the LabCorp Plan's menu instead of MFS Mid Cap Growth CIT Fee Class CT (no ticker). The remainder of the Motion is **DENIED**.

This, the 28th day of July 2023.

/s/ Loretta C. Biggs  
United States District Judge