IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAMIAN MCDONALD, on behalf of the Laboratory Corporation of America Holdings Employees' Retirement Plan, and all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:22CV680 |
| LABORATORY CORPORATION OF AMERICA HOLDINGS, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Damian McDonald ("Plaintiff"), on behalf of himself and all others similarly situated, brought this action against Defendant Laboratory Corporation of America Holdings ("LabCorp"), alleging a breach of LabCorp's fiduciary duty of prudence in violation of the Employee Retirement Income Security Act ("ERISA"), under 29 U.S.C. § 1109(a)(2) and (3) to enforce liability under 29 U.S.C. § 109(a). (ECF No. 15 ¶ 4.) Before the Court are LabCorp's Motions to Exclude Experts Al Otto and Ty Minnich. (ECF Nos. 55, 57.) Additionally, before the Court is LabCorp's Motion for Summary Judgment. (ECF No. 52.) For the reasons stated herein, LabCorp's Motion to Exclude Expert Al Otto is granted. LabCorp's Motion to Exclude Expert Ty Minnich is denied. Further, LabCorp's Motion for Summary Judgment is denied.

## I. BACKGROUND

LabCorp is a fiduciary of the Laboratory Corporation of America Holdings Employees' Retirement Plan (the "Plan"), a qualified retirement plan governed by ERISA. (ECF No. 62-3 ¶ 15.) The Plan is a defined contribution salary deferral plan for LabCorp employees. (ECF No. 54-3 ¶ 32.) As of December 31, 2022, the Plan contained over $3 billion in assets and had over 60,000 participants. (ECF No. 54-8 at 54.)

The Plan pays fees to a recordkeeper to provide day-to-day services necessary to run the Plan. (*See* ECF No. 54-8.) Throughout the class period Fidelity Workplace Services, LLC ("Fidelity") was the Plan's recordkeeper. (*See id.*; *see also* ECF No. 54-3 ¶ 32.) The Plan retained CAPTRUST to serve as an investment consultant and provide advice regarding the Plan's investments and fees. (ECF No. 54-3 ¶¶ 18, 41.) CAPTRUST assessed the Plan's fees on four separate occasions during the class period. (*Id.* ¶¶ 48, 53, 54.) CAPTRUST conducted requests for information ("RFI") in 2017 and 2019, and benchmarking studies in 2021 and 2022. (*Id.*)

Plaintiff alleges that LabCorp breached its fiduciary duty of prudence by: (1) selecting imprudent investments for the Plan; and (2) failing to prudently manage and control the compensation the recordkeeper received from the Plan. (ECF No. 15 ¶¶ 132-34.)

On August 18, 2022, Plaintiff initiated this action by filing a complaint. (ECF No. 1.) Plaintiff then filed his First Amended Complaint on November 14, 2022. (ECF No. 15.) At the motion to dismiss stage, this Court found that Plaintiff failed to state a claim that LabCorp breached its duty of prudence by removing a mutual fund in favor of a Mid Cap Growth CIT, and that all of Plaintiff's other claims were sufficiently pled. (ECF No. 24 at 16.) On October 16, 2024, this Court granted Plaintiff's Motion for Class Certification and appointed Damian

McDonald as class representative. (ECF No. 50 at 16.) Following discovery, on November 24, 2024, LabCorp filed a Motion for Summary Judgment on all of Plaintiff's claims, (ECF No. 52), and on the same day filed Motions to Exclude Experts Al Otto and Ty Minnich, (ECF Nos. 55, 57.) The Court will first address LabCorp's motions to exclude expert opinions.

## II. MOTIONS TO EXCLUDE EXPERT OPINION

The admissibility of expert opinions is governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's landmark ruling in *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d).

Thus, expert testimony is admissible only if: (1) the expert is qualified, (2) the testimony is relevant, and (3) the testimony is based on reliable scientific methodology. *See Daubert*, *See* 509 U.S. at 594-95. The Court must find these elements "at the outset, . . . by a preponderance of proof." *Id.* at 592, 592 n.10.

To decide whether a witness is qualified, a district court "must decide whether the expert has sufficient specialized knowledge to assist . . . in deciding the particular issues in the case." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 162 (4th Cir. 2012) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999)) (internal quotation marks omitted). An expert who is

qualified must provide opinions that are relevant. An expert's opinion is relevant if it "fit[s]" the facts of the case, meaning it has "a valid scientific connection to the pertinent inquiry." *Daubert*, 509 U.S. at 591, 592. "This ensures that the expert 'helps the trier of fact to understand the evidence or to determine a fact in issue.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (internal citation omitted in original) (internal quotation marks omitted)). "[I]f an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Id.* at 281.

Further, relevant expert opinions must also by reliable. An expert's opinion is reliable if it is "based on scientific, technical, or other specialized knowledge and not on belief or speculation." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (emphasis omitted). While the subject of scientific testimony must not "be 'known' to a certainty," it must be "derived by the scientific method" and "supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. Reliability is a "flexible" inquiry that must focus "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594, 95. In *Daubert*, the Supreme Court outlined a non-exhaustive list of factors to guide lower courts in assessing reliability, including: (1) whether the theory can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential rate of error; (4) whether standards exist to control the technique's operation; and (5) the degree of acceptance of the methodology within the relevant scientific community. *Id.* at 593-94. These factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony," and trial courts have "broad latitude" in choosing which factors are "reasonable

4

measures of reliability in a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 153 (1999).

### A. Al Otto's Challenged Expert Opinions are Unreliable

Al Otto is currently the CEO of PlanScope360, a retirement plan governance and management company that serves governmental and non-profit defined contribution plans. (ECF No. 62-3 ¶ 6.) Prior to this role, Otto spent over 30 years in the retirement plan services industry in different capacities. (*Id.* ¶ 7.) Otto has served as an investment advisor representative, investment manager, and named investment fiduciary for several organizations. (*Id.*)

Otto states that he is "an expert in . . . fiduciary duties and process[es] associated with ERISA defined contribution plans, the process for monitoring service provider fees and determining fee reasonableness based on the services provided." (*Id.* ¶ 6.) In this case, Otto was retained by Plaintiff to "provide expert analysis and opinions regarding the Plan fiduciaries' fiduciary oversight and process to control plan expenses." (*Id.* ¶ 1.) Otto makes conclusions on the amount the Plan paid to its recordkeeper Fidelity, and the share classes of investments available to the Plan. (*Id.* ¶¶ 94-117.)

While Otto offers several opinions in his report, LabCorp argues that only two of his opinions should be excluded because they "do not stem from reliable methodologies." (ECF No. 56 at 4.) LabCorp seeks to exclude: (1) Otto's opinion regarding a reasonable recordkeeping fee and (2) Otto's opinion on how much float was received by Fidelity. (*Id.* at 4, 6.) LabCorp does not contest that Otto is qualified to give opinions on fiduciary duties and processes associated with ERISA defined contribution plans, nor that his opinions in his report, (ECF No. 62-3.), are relevant to this case. (*See* ECF No. 56 at 4-7.) Based on Otto's

5

extensive experience dealing with fiduciary duties in ERISA defined contribution plans as outlined above, and because his opinions directly relate to Plaintiff's claims, this Court finds that Otto is qualified to testify related to those issues, and his opinions outlined in his report are relevant. Therefore, the Court will now address whether the two contested opinions, which are the subject of the motion to exclude, are reliable.

LabCorp first seeks to exclude Otto's opinion regarding a reasonable recordkeeping fee. Otto's expert report concludes that "$21 per participant [is] the reasonable fee for recordkeeping services from Fidelity." (ECF No. 62-3 ¶ 89.) He arrived at this figure after looking at a stipulation from a separate case which Fidelity was involved, *Moitoso v. FMR* LLC, 451 F. Supp. 3d 189 (D. Mass 2020). (*See id.* ¶¶ 88–89.) In *Moitoso*, Fidelity's own retirement plan for their employee's was at issue, and they stipulated that "if Fidelity were a third-party negotiating [the plan offered to their employees] at arms-length, the value of [recordkeeping] services would range from $14-$21 per person per year over the class period." 451 F. Supp. 3d at 214. Otto's main source, and arguably his only independent source, to support his opinion on a reasonable recordkeeping fee in this case is the *Moitoso* stipulation. (*See generally* ECF No. 62-3.) While the *Moitoso* stipulation may have some relevance to the issue before the Court, it alone is not sufficient basis for this Court to determine that Otto's opinion is reliable. Fidelity's stipulation in *Moitoso* on recordkeeping prices was made in relation to the structure of its own plan, not plans in general and specifically not the Plan at issue here. 451 F. Supp. 3d at 214. Additionally, the litigants in the instant case and in *Moitoso* are not similarly situated as the plan in *Moitoso* was larger in assets and participants. *Id.* at 199. Otto even acknowledges that the number of participants in the Plan is lower than the number of participants in *Moitoso* but explains that he took that into consideration which is the reason why he landed on the

6

higher end of the range, with $21 as a reasonable fee. (ECF No. 62-3 ¶ 89.) In his deposition, Otto was asked if he took any steps to verify that the Plan would have been able to receive a $21 per participant fee to which he answers, "I think [the stipulation] trumps all other information." (ECF No. 62-5 at 44:6-8, 24-25.)

Otto also states that his experience helps him believe that $14 to $21 is the appropriate range. (*Id.* at 47:11-12.) While experts are able to rely on their experience in their conclusions, "district court[s] must nonetheless require an experiential witness to explain how [his] experience leads to the conclusions reached, why [his] experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (alterations in original) (internal quotation marks omitted) (citation omitted). Otto fails to do this. He simply states that his opinion on a reasonable record keeping fee is derived from "[his] experience plus [the stipulation by Fidelity] and the fact that there is no RFP in this case." (ECF No. 62-5 at 47:12-13.) This Court declines to rely on Otto's experience without further explanation of how his experience led him to calculate the fees. Accordingly, the Court finds, that Otto's opinion related to what is a reasonable recordkeeping fee, is not supported by any scientific methodology, nor supported by appropriate validation, and therefore is not reliable. This opinion will be excluded.

LabCorp also seeks to exclude Otto's opinion regarding how much float compensation Fidelity received from the Plan.[1] (ECF No. 56 at 6.) In his report Otto includes a table that states his opinion on the estimated amount Fidelity received in float compensation. (ECF No. 62-3 ¶ 111.) Otto estimated float calculations from the years 2017 to 2022. (*Id.*) His

---

[1] "Float compensation" is income that the recordkeeper earns when a participant of the Plan requests a distribution from his or her account. (ECF No. 62-3 ¶ 75.) After a plan trustee or custodian obtains the proceeds from the participants account, they temporarily transfer it into an interest-bearing account before distributing it to the participant. (*Id.*)

7

calculations increase each year, and they range from $26,067 in 2017 to $69,234 in 2022. (*Id.*) To explain how he calculated these numbers, Otto states in a footnote that his formula is "Distributions * average interest * 5/365= float earnings." (*Id.* at ¶ 110 n. 35.)

Otto does not explain this formula in further detail, nor does he provide evidence that the formula is reliable in his field. For example, Otto doesn't state whether it has been tested before, whether it has been subjected to peer review, nor its degree of acceptance within Otto's community. *See Daubert*, 509 U.S. at 593-94 (outlining a non-exhaustive list of factors to guide lower courts in assessing reliability).

In addition to the lack of evidence on the reliability of this formula, Otto's calculations are unreliable as the values he used in the formula are arbitrary. Otto's findings from his formula are titled "estimated float" in his report. (ECF No. 62-3 ¶ 111.) When asked why his table had the title "estimated float" instead of actual float Otto stated that he "did not have enough information to determine actual float." (ECF No. 60-3 at 83:13-14.) The information Otto states he was missing from determining actual float is the average interest and the number of days the float earnings sat with Fidelity. (ECF Nos. 62-3 ¶¶ 110, 111 n. 36; 56-3 at 82:9-17.) Otto states that information on the interest rates and specific days they held the distributions "was not available nor was it ever discussed at the committee level." (ECF No. 56-3 at 82:16-17.)

To supplement this lack of information, Otto determined the "average interest" part of his formula by using Fidelity's annual interest rate in their Managed Income Portfolio II Fund ("MIP II"). (ECF No. 56-3 at 83:11, 85:17-21.) However, Otto is not aware of whether any distributions were invested in the MIP II fund. (*Id.* at 85:22-24.) Further, he supplemented the number of days the float earnings sat in an interest-bearing account as five days ("5/365")

8

based on his "experience in general over the course of [his] career." (*Id.* at 89:11-12.) When asked if he cited to any authority for his decision to use five days, Otto states "that's just my experience." (*Id.* at 89:13-15.) Otto does not explain how his experience led him to the conclusion he reached nor why his experience is a sufficient basis for his opinion in this case. *See Wilson*, 484 F.3d at 274.

Plaintiff argues that LabCorp contesting Otto's opinion on the applicable interest rate and amount of time the funds sit in an interest-bearing account goes to the weight of the issue and not admissibility. (ECF No. 60 at 20.) This Court disagrees. The figures Otto uses in calculating float appear to be little more than unsubstantiated assumptions which goes directly to the reliability of his methodology not the weight of the evidence. Therefore, this Court finds that Otto's opinion regarding the amount of float compensation Fidelity received does not meet the requirements under Rule 702, as it is unreliable. This opinion will therefore be excluded.

### B. Ty Minnich's Opinions are Reliable

Ty Minnich is currently self-employed as an independent retirement plan consultant reviewing fiduciary due diligence processes and recordkeeping services and fees for defined contribution plans. (ECF No. 58-2 at 6.) Minnich has 30 years of experience working exclusively in the defined contribution markets "with specialization in 403(b)/401(k) plans and the applicable requirements from a fiduciary due diligence perspective." (*Id.* at 5.)

For the past 15 years, Minnich has served in senior defined contribution practice leader roles. (*Id.*) In those roles he has been responsible for delivering market growth and revenue maximization and he oversaw request for proposals and pricing. (*Id.*) Minnich holds a Bachelor of Science in Mathematics from the University of Miami. (*Id.*) He also has a Certified

9

Employee Benefit Specialist, and a Retirement Plans Associate designations from the Wharton School. (*Id.* at 5-6.)

Minnich was retained by Plaintiff to provide an expert opinion on "the recordkeeping and administrative fees charged to the Plan, and the reasonable market rate for the services obtained by the Plan." (*Id.* at 3.) Minnich draws conclusions on whether the Plan was prudently administered and whether compensation paid to the Plan's recordkeeper was reasonable. (*Id.*) LabCorp seeks to exclude Minnich's opinion on a reasonable recordkeeping fee range for the Plan. (ECF No. 58 at 5.) LabCorp does not contest whether Minnich is qualified nor whether his opinion is relevant to this case. (*See* ECF No. 58 at 2-3.) Like Otto, this Court finds that Minnich is both qualified and his opinions are relevant. The Court will now address whether Minnich's challenged opinion is therefore reliable.

Minnich's opinion on a reasonable recordkeeping fee is "the reasonable recordkeeping fees that the Plan could have paid would be $20-$25 per participant over the Class Period." (ECF No. 58-2 at 15.) He reaches this conclusion by analyzing a multitude of factors including the stipulation in *Moitoso* and multiple fee benchmarking studies to identify pricing comparators. (ECF Nos. 58-2 at 14-15; 61-3 at 20:13-24.)

While Minnich uses the stipulation in *Moitoso* in reaching his opinion, unlike Otto, he did not base his opinion solely on the stipulation. When asked if his conclusion is "not based just on…the Fidelity stipulation" Minnich answers "[t]hat is correct." (ECF No. 58-3 at 19:23-20:1.) Minnich then explains that he relies on a 2017 RFI, a 2019 RFI, a 2021 fee benchmark, and a 2022 fee benchmark among other things. (*Id.* at 20:13-21.) Included in this information are bids from other recordkeepers tailored to the Plan for less than what the Plan paid Fidelity. (ECF No. 61-3 at 16:14-24.) Minnich combines all this information with a three-step analysis

10

that he states, "dictate[s] pricing in the industry." (ECF No. 58-2 at 11.) That analysis includes: "(1) participant count; (2) enhanced services; and (3) ancillary revenue sources." (*Id.*)

LabCorp highlights a case, *McCauley v. PNC Fin. Servs Grp., Inc.*, where Minnich's testimony was found to not be based on reliable methodology. 2024 WL 3091754, * 4 (W.D. PA. June 21, 2024). In *McCauley*, the court found that Minnich's testimony was unreliable because he did not use comparator plans in determining his opinion on a reasonable fee, and "cherry pick[ed]" comparator plans that supported his conclusions. *Id.* However, in the instant case Minnich states that he engaged in a comparator analysis with other bids given to the Plan, he also reviewed comparator plans outlined in Plaintiff's Amended Complaint and ensured that they were reasonable comparators. (ECF No. 61-3 at 16:9-15, 48:9-12.)

Therefore, the Court finds that Minnich's opinion is based on reliable methodology that he states, "dictate[s] pricing in the industry," explains his methodology in his report, rests his opinion on more than just the *Moitoso* stipulation, and uses comparator bids and plans in reaching his conclusion. (*See* ECF No. 58-2 at 10–11.)

### C. Conclusion

Thus, the Court concludes that LabCorp's Motion to Exclude Expert Al Otto, specifically his contested opinions, is granted and Otto's opinions regarding reasonable record keeping fees and float compensation received by Fidelity are excluded and will not be considered in determining summary judgment. *See United States v. McClellan*, 44 F.4th 200, 206 (4th Cir. 2022) (internal quotations omitted) (citation omitted) ("evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment"). Further LabCorp's Motion to Exclude Expert Ty Minnich is denied.

### III. MOTION FOR SUMMARY JUDGMENT

LabCorp filed a Motion for Summary Judgment arguing that the "record shows that LabCorp engaged in a prudent process, and a hypothetical fiduciary would have reached the same objectively prudent result." (ECF No. 54 at 2.) Plaintiff opposes LabCorp's motion stating LabCorp has not shown that its actions were prudent as a matter of law, and LabCorp does not establish an absence of disputed issues of material fact for trial. (ECF No. 62 at 17.)

#### A. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations omitted) (internal citations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the nonmoving party would prevail at trial. *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the

nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (additional citation omitted). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Celotex*, 477 U.S. at 324.

### B. Discussion

ERISA imposes fiduciary duties "on those responsible for the administration of employee benefit plans and the investment and disposal of plan assets." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 355 (4th Cir. 2014). The duty of prudence under ERISA requires that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

Prudence also includes "a continuing duty to monitor investments and remove imprudent ones." *Tibble v. Edison Intern.*, 575 U.S. 523, 530 (2015). "When deciding whether a plan fiduciary has acted prudently, a [c]ourt must inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *DiFelice v. U.S.*

13

*Airways, Inc.*, 497 F.3d 410, 420 (4th Cir. 2007) (internal quotation marks omitted) (citation omitted).

A fiduciary who breaches any "responsibilities, obligations, or duties" is personally liable for any losses to the plan resulting from the breach. 29 U.S.C. § 1109(a). Plan participants are authorized by ERISA to seek action on behalf of the plan for a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2).

1. <u>Recordkeeping Fees</u>

Plaintiff's Amended Complaint alleges that LabCorp breached its fiduciary duty of prudence by failing to monitor or control the excess compensation paid for recordkeeping services. (ECF No. 15 ¶ 132.) LabCorp argues that summary judgment should be granted on this claim because "the record shows that compared to the fees of other similarly sized plans, the Plan's recordkeeping fees fell within a reasonable range." (ECF No. 54 at 3.)

Fiduciaries breach their fiduciary duties when they fail to monitor and control recordkeeping fees incurred by the plan. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (upholding district court's finding that the fiduciaries breached their duties by failing to diligently investigate Fidelity and monitor plan recordkeeping costs).

Pursuant to LabCorp's recordkeeping agreement with Fidelity, the Plan was set to pay $30 per participant for recordkeeping services from 2015 to July 1, 2018.[2] (ECF No. 54-4 at 2.) The Plan then would pay $32 per participant from July 1, 2018, to July 1, 2023, and $29 per participant thereafter. (*See* ECF Nos. 54-5 at 2; 54-6 at 2.) In addition, both parties

---

[2] While the parties disagree on whether these numbers are what was actually paid to Fidelity, both parties agree that this is the amount stated in the recordkeeping agreement. (ECF Nos. 54 ¶ 5; 62 ¶ 5.)

14

acknowledge that Fidelity received indirect payment through float compensation, but the parties disagree on how much float Fidelity received. (*Cf* ECF Nos. 54 ¶ 9; 62 ¶ 9.)

Both parties' experts hold competing opinions on whether LabCorp breached its fiduciary duty of prudence as it applies to recordkeeping fees received by Fidelity. Plaintiff's expert, Ty Minnich, states that LabCorp "did not negotiate reasonable compensation to the recordkeeper for the Plan, . . . did not properly monitor the recordkeeper's compensation and did not put the Plan out for a competitive bid for recordkeeping services using a request for proposal . . . process since before 2016." (ECF No. 58-2 at 6.) Minnich states that "the most reliable way to determine the reasonable market rate is to request proposals through a formal competitive bidding process such as an RFP" which LabCorp did not conduct in this case. (*Id.* at 6, 10.) He opines that had LabCorp "acted consistent with widely recognized industry practices," the Plan would have paid $20-$25 per participant in recordkeeping fees over the Class Period. (*Id.* at 15.)

On the contrary, LabCorp's expert, Steven K. Gissiner, states that the "Committee's monitoring of the Plan's recordkeeping fees and services was rigorous and consistent with industry practices." (ECF 54-3 ¶ 47.) Gissiner states that LabCorp's process in conducting benchmark analysis confirmed the reasonableness of fees without having to conduct an RFP. (*Id.* ¶ 65.) He states that the Committee requesting CAPTRUST as a consultant, conducting RFI's in 2019 and 2019, and preforming fee benchmark analyses in 2021 and 2022 are sufficient to meet the duty of prudence. (*See id.* ¶ 48.) Further, Gissiner shares the findings of his own independent benchmark analysis which looked at the Plan's fees compared to other similarly situated plans. (*Id.* ¶¶ 69, 71-77.) Gissiner found that the fees paid were consistent with other similarly sized plans. (*Id.* ¶ 77.)

Additionally, both experts disagree on whether LabCorp breached its duty by not prudently monitoring how much Fidelity received in indirect float compensation. Plaintiff's expert states "the Plan's recordkeeper, [Fidelity], received indirect compensation without disclosing the actual amount." (ECF No. 58-2 at 12.) Conversely, Gissiner states that Fidelity disclosed float earnings attributable to the Plan throughout the relevant period in both its disclosures and reports. (ECF No. 54-3 ¶ 92.) He then states that "the float amounts disclosed by Fidelity were minimal" and the "float earnings have been returned to the Plan since July 1, 2018." (*Id.* ¶¶ 92, 96.)

Where there are two qualifying experts, a "battle of the experts" should not be resolved at summary judgment. *Reyazuddin v. Montgomery County, Md.*, 789 F.3d 407, 417 (4th Cir. 2015) (finding that the district court judge crediting one expert and discrediting another was not proper at summary judgment). "[A]t the summary judgment stage, the judge's function is not [] to self-weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In light of the competing expert opinions, this Court finds that a genuine issue remains as to whether LabCorp acted prudently as it relates to the recordkeeping fees received by Fidelity.

2. <u>Share Classes</u>

Plaintiff's Amended Complaint alleges that "LabCorp selected and retained investment options in the Plan despite the high cost of the funds in relation to other comparable investments." (ECF No. 15 ¶ 133.) Plaintiff also alleged that LabCorp "failed to investigate the availability of lower-cost share classes of certain mutual funds in the Plan and failed to act within a reasonable time to remove funds that should have been replaced with lower-cost share class funds." (*Id.* ¶ 134.)

16

LabCorp argues for summary judgment on these claims because they "engaged in a prudent monitoring process with respect to share classes of the Plan's investments by retaining CAPTRUST and discussing the Plan's investments." (ECF No. 54 at 22.) Plaintiff counters that LabCorp's reliance on CAPTRUST is insufficient to argue that it appropriately evaluated the share classes. (ECF No. 62 at 26.)

An ERISA fiduciary acts imprudently "by failing to properly monitor investments and remove imprudent ones." *Tibble*, 575 U.S. at 530. "[P]lan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options" and they must "remove . . . imprudent investment[s] from the plan within a reasonable time." *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022) (citing *id.* at 529-30). "A fiduciary may breach his duties to plan beneficiaries by failing to investigate and evaluate the merits of his investment decisions." *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995); *accord DiFelice*, 497 U.S. at 420 (citing *Kuper*, 66 F.3d at 1459).

In its investment lineup, the Plan included the Fidelity Contrafund Commingled Pool, the Managed Income Portfolio II ("MIP II"), and the T. Rowe Price Retirement Trusts. (ECF 54-3 ¶ 101.) Plaintiff's expert on share classes, Al Otto, states that the Plan did not actively pursue the lowest cost shares available for these funds, while LabCorp's expert, Gissiner, states that when the Plan was eligible for lower share classes, the Plan transitioned into them. (*Id.*; ECF No. 62-3 ¶ 99.)

Regarding the Fidelity Contrafund Commingled Pool Investment Fund, Otto states that it was not until 2022 that the Plan changed to a lower expense ratio share class available leading plan participants to pay higher fees to Fidelity than necessary. (ECF No. 62-3 ¶ 99.) Otto states that the lower class was available to plans since 2014 and because of LabCorp not

17

switching, the Plan lost amounts of over $13 million. (*Id.* ¶ 98, 100.) Conversely, LabCorp's expert, Gissiner, states that the Plan was not able to qualify for the lower share class until 2021, and they transitioned to the less expensive share class less than 4 months after they were notified. (ECF No. 54-3 ¶ 106.)

Regarding the MIP II, Otto states that LabCorp's actions here "is another example of the Investment Committees slow actions and abdication of duty by reacting to the vendor made changes instead of actively pursuing the lowest cost shares." (ECF No. 62-3 ¶ 108.) Otto's report states that LabCorp switched to the lower-class option in 2020 when it had been available since 1999. (*Id.* ¶ 107.) Gissiner's report counters, stating that the Plan was not qualified for the lowest cost share class until 2019 because it did not reach the minimum asset requirement. (ECF No. 54-3 ¶¶ 109-10.)

Lastly, regarding the T. Rowe Price Retirement Trust, Otto states that there was no discussion in the meeting minutes to negotiate lower share classes from 2017 through 2021 and it was not until 2022 that the lowest cost shares were implemented. (ECF No. 62-3 ¶¶ 113, 114.) Gissiner states that the lower cost share classes in this fund had a minimum asset requirement that the Plan did not satisfy, and once the Plan satisfied such requirement they transitioned into those classes. (ECF No. 54-3 ¶ 111.)

The experts disagree on when the lowest class share options were available to the Plan, and whether LabCorp breached its duty of prudence by failing to monitor investments and take advantage of the lower share classes. As previously stated, this Court cannot choose a side in the "battle of the experts" at the summary judgment stage. *Reyazuddin*, 789 F.3d at 417. Therefore, this Court concludes that there are genuine issues of material fact regarding whether LabCorp breached its duty of prudence regarding the share classes.

18

For the reasons stated herein, the Court enters the following:

**ORDER**

**IT IS THEREFORE ORDERED** that LabCorp's Motion to Exclude Expert Al Otto, specifically as to the contested opinions, (ECF No. 55), is **GRANTED**.

**IT IS FURTHER ORDERED** that LabCorp's Motion to Exclude Expert Ty Minnich, (ECF No. 57), is **DENIED**.

**IT IS FURTHER ORDERED** that LabCorp's Motion for Summary Judgment, (ECF No. 52), is **DENIED.**

This, the 28th day of March 2025.

/s/ Loretta C. Biggs
Senior United States District Judge